UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIO ACUNA,<br>    Plaintiff<br><br>v.<br><br>A BETTER WAY WHOLESALE<br>AUTOS, INC. AND CAPITAL ONE, N.A<br>D/B/A CAPITAL ONE<br>AUTO FINANCE,<br>    Defendants | CIVIL ACTION NO.<br><br><br><br><br>TRIAL BY JURY DEMANDED<br><br><br><br>SEPTEMBER 18, 2019 |

## **COMPLAINT**

### I. INTRODUCTION

1.  This is an action brought by a consumer against an automobile dealership for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.* and for breach of the implied warranty of merchantability under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, and breach of express warranty. Liability is asserted against the assignee of the retail installment contract pursuant to the terms of the contract and Conn. Gen. Stat. § 52-572g.  Liability is asserted independently against the assignee for violation of the Fair Credit Reporting Act ("FCRA") and the Creditor Collections Practices Act ("CCPA").

### II. PARTIES

2.  Plaintiff, Mario Acuna, is a consumer residing in Waterbury, Connecticut.

3. Defendant A Better Way Wholesale Autos, Inc. ("ABW") is a Connecticut corporation and is licensed to operate an automobile dealership in Naugatuck, Connecticut.

4. Defendant Capital One, N.A. d/b/a Capital One Auto Finance ("Capital One") is a national bank with a principal office in McClean, Virginia.

## III.  JURISDICTION

5. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1640, 15 U.S.C. § 1681p, 28 U.S.C. § 1331, and Fed. R. Civ. P. 18(a).

6. This Court has jurisdiction over ABW because it is located in Connecticut and is organized under Connecticut law.

7. This Court has jurisdiction over Capital One because it regularly conducts business in this state.

8. Venue in this Court is proper because all of the parties are located in this state and the transaction occurred in this state.

## IV.  FACTUAL ALLEGATIONS

9. On or about November 3, 2018, Plaintiff visited ABW interested in purchasing a used vehicle, specifically a 2017 Jeep Cherokee Trailhawk (the "Vehicle"), after seeing the Vehicle on ABW's website.

10. Plaintiff met with Christopher Foody ("Foody"), an ABW salesperson.

11. Foody showed Plaintiff a CarFax vehicle history report on a computer screen during the course of the transaction. The report indicated that the Vehicle had been involved in an accident.

12. Foody falsely told Plaintiff that the damage was only cosmetic and that he did not need to worry.

13. Unbeknownst to Plaintiff, the Vehicle had been involved in a crash or other event resulting in structural damage to the front upper unibody rendering it unsafe to drive.

14. This damage would have been apparent to any automotive professional performing a visual inspection of the Vehicle and/or the mandatory safety inspection pursuant to Conn. Gen. Stat. § 14-62(g).

15. Plaintiff relied on the statement regarding the cosmetic nature of the damage, since if he had known that resultant damage rendered the Vehicle unsafe, he would not have gone forward with the transaction.

16. Plaintiff was provided with a Connecticut Department of Motor Vehicles Form K-208 evincing the results of the safety inspection purportedly performed pursuant to Conn. Gen. Stat. § 14-62(g) indicating that the "frame/chassis" passed inspection and that the Vehicle was safe for operation on the roads and highways of Connecticut.

17. ABW has a business practice of procuring damaged vehicles cheaply at auction, often with disclosures of structural damage, and selling them to unsuspecting consumers without repairing the damage or disclosing the damage.

18. It falsely represents to potential buyers on its website and in its sales presentations that its low prices, which it falsely and deceptively claims are "wholesale" prices, are attributable to its business model.

19. Plaintiff was originally told that his monthly payment would be more than $500 per month.

20. A member of ABW's finance staff told him that if he paid an additional $300 for "free" oil changes for life[1], his monthly payment would be reduced to $477 per month.

21. Plaintiff reluctantly agreed to accept this additional charge, although he was unable to compare credit terms between the transaction with the "free" oil changes included and without their inclusion.

22. Plaintiff agreed to purchase the Vehicle for a cash price of $20,995. He paid a $1,800 down payment and financed the remaining balance pursuant to a retail installment sales contract (the "Contract") that was subsequently assigned to Capital One.

23. The Contract lists the oil change contract as part of the amount financed instead of the finance charge.

24. The lower monthly payment was conditioned upon the purchase of the oil change contract. Since that contract was incidental to the extension of credit at the $477 monthly payment, it should have been included as part of the finance charge pursuant to Regulation Z under TILA.

25. Shortly after taking delivery, Plaintiff began to experience problems with the Vehicle. While driving on the highway, it would shutter violently. When the brakes were applied while traveling at speed, the shuttering became more intense.

26. As a result of the shuttering and its effect upon braking, Plaintiff was involved in a minor accident and brought the Vehicle to a body shop for repairs.

---

[1] According to the Purchase Order, the actual charge for the oil change service was $299.

27. While the Vehicle was being worked on, the body shop informed Plaintiff that the Vehicle had previously been involved in a significant accident and told him that the Vehicle may not be safe to drive.

28. Alarmed, Plaintiff had the Vehicle inspected by an independent auto body expert at a cost of $650, and the expert informed Plaintiff that the Vehicle had structural damage, that it had not been properly repaired, and that it was not safe to drive.

29. Due to the defects to the Vehicle, Plaintiff elected to revoke acceptance of the Vehicle and returned it to ABW on January 21, 2019.

30. Plaintiff's counsel sent notice (the "Letter") to ABW and Capital One (collectively, "Defendants") on February 1, 2019 informing them of Plaintiff's claims and demanding a return of all sums paid under the Contract.

31. The Letter also informed Capital One that Plaintiff disputed any further indebtedness under the Contract (the "Account"), that Plaintiff was represented by legal counsel and should be contacted only through counsel. The letter provided Capital One with the name, address, and telephone number of Plaintiff's legal counsel.

32. Despite request, Capital One continued to report the Account as delinquent to Equifax and Experian, two consumer reporting agencies ("CRAs").

33. Capital One acknowledged receipt of the letter and advised that it would report the Account as disputed only if disputes were initiated with the CRAs.

34. On or about April 23, 2019, Plaintiff initiated disputes with the CRAs by providing Equifax and Experian with information regarding the disputed nature of the account and requesting that they investigate the reporting.

35. Equifax and Experian made an inquiry of Capital One and asked it to investigate its records and to either verify or update its reporting.

36. Despite its actual knowledge that Plaintiff disputed any indebtedness, Capital One improperly reported to Equifax and Experian that the Account had been charged off, was delinquent, or both, and it failed to include as part of its reporting that Plaintiff had disputed the claimed debt.

37. As a consequence of Capital One's false response, Equifax and Experian continued to report the claimed debt negatively without any reference to the dispute.

38. In June 2019, Plaintiff attempted to obtain credit from JP Morgan Chase Bank, N.A., but was rejected, in whole or in part, due to the negative reporting of the Account by Experian.

39. On or about May 23, 2019, ABW returned the $1,800 down payment. No other sums have been returned to Plaintiff.

40. On or about May 13, 2019, Capital One sent a letter directly to Plaintiff attempting to collect on the Account.

## V.   CAUSES OF ACTION

### A. TRUTH IN LENDING ACT (ABW ONLY)

41. ABW violated TILA by including the cost of the oil change contract as part of the amount financed and by not disclosing it as part of the finance charge even though these charges were incidental to the extension of credit at the offered monthly payment.

42. As a result, the required disclosures are inaccurate in violation of Regulation Z.

43. ABW is liable to Plaintiff for actual damages plus additional statutory damages of $2,000 and attorney's fees and costs.

### a. **FAIR CREDIT REPORTING ACT (CAPITAL ONE ONLY)**

44. Capital One is a person as that term is defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of information to consumer reporting agencies as contemplated by the FCRA, 15 U.S.C. § 1681s-2.

45. 15 U.S.C. § 1681s-2(a)(1)(A) prohibited Capital One from reporting information that it had reasonable cause to know was inaccurate to CRAs.

46. Capital One violated 15 U.S.C. § 1681s-2(a)(1)(A).

47. 15 U.S.C. § 1681s-2(a)(1)(B) prohibited Capital One from furnishing information to the CRAs after being notified by Plaintiff that information on his reports was inaccurate when it was in fact inaccurate.

48. Capital One violated 15 U.S.C. § 1681s-2(a)(1)(B).

49. 15 U.S.C. § 1681s-2(a)(2) creates a duty for Capital One to correct and update information that it has furnished to CRAs and it has learned that information reported was inaccurate or incomplete.

50. Pursuant to 15 U.S.C. § 1681s-2(b), upon notification from CRAs that the information on the Plaintiff's consumer report was disputed by as inaccurate, Capital One had a duty to conduct an investigation with respect to the disputed information and review all relevant information provided by the CRAs.

51. Capital One violated 15 U.S.C. § 1681s-2(b), for which a private right of action exists, by its negligence in failing to investigate the disputed information.

52. Capital One is liable to Plaintiff for his damages and a reasonable attorney's fee pursuant to 15 U.S.C. § 1681o.

53. Capital One's failure to investigate the disputed information following the provision of the explanation of benefits was willful, and it is also liable to Plaintiff for punitive damages and statutory damages pursuant to 15 U.S.C. § 1681n.

### a. CREDITOR COLLECTIONS PRACTICES ACT (CAPITAL ONE ONLY)

54. Capital One violated the CCPA by communicating directly with Plaintiff after it had been notified in the Letter that he was represented by legal counsel and had been notified of his counsel's name and address, a violation of Conn. Agencies Reg. § 36a-647-4(a)(2).

55. For Capital One's violations of the CCPA, Plaintiff is entitled to damages, statutory damages of up to $1,000, attorney's fees and costs pursuant to Conn. Gen. Stat. § 36a-648.

### b. BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

56. The Vehicle is a consumer product as that term is defined in § 2301(1) of the MMWA (15 U.S.C. §§ 2301-2312).

57. ABW breached the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314, by selling the Vehicle to Plaintiff in an unsafe condition with structural damage.

58. ABW knew, or reasonably should have known, based on its expertise that the Vehicle was unsafe and unmerchantable at the time of sale due to structural damage.

59. It is not possible for ABW to cure the breaches of implied warranty of merchantability, or Plaintiff provided ABW with a reasonable opportunity to cure the breach of implied warranty but it has not done so, or both.

60. ABW's breaches of the implied warranty of merchantability were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to Plaintiff' interests and the injury that he sustained.

61. Specifically, the Vehicle was unsafe and posed a safety risk to Plaintiff and any other passengers in the Vehicle.

62. ABW's breach of the implied warranty of merchantability has caused Plaintiff to incur damages, including common law punitive damages.

63. Plaintiff also seeks an order stating that he validly revoked acceptance of the Vehicle.

64. ABW is also liable for attorney's fees pursuant to MMWA.

65. Capital One is liable to Plaintiff as assignee pursuant to Conn. Gen. Stat. § 52-572g and the terms of the Contract.

### c. BREACH OF EXPRESS WARRANTY

66. ABW made affirmations of fact or promise relating to the Vehicle that became part of the basis of the bargain and that created express warranties pursuant to Conn. Gen. Stat. § 42a-2-313(a).

67. Specifically, ABW represented that the damage noted in the CarFax vehicle history report was only cosmetic, that the Vehicle was safe for operation on the

Connecticut Department of Motor Vehicles Form K-208, and that the "frame/chassis" passed inspection and was safe.

68. ABW's representations that the Vehicle was safe were part of the basis of the bargain and had Plaintiff known otherwise, he would not have purchased the Vehicle.

69. The Vehicle was not safe and the "frame/chassis" should not have passed inspection.

70. ABW's breach of express warranties were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to the Plaintiff's interests and the injury that he sustained. As a result of the above-described actions, ABW is liable to Plaintiff for his damages, including common law punitive damages.

71. Specifically, the Vehicle was unsafe and posed a safety risk to Plaintiff and any other passengers in the Vehicle.

72. Capital One is liable to Plaintiff pursuant to Conn. Gen. Stat. § 52-572g and the terms of the Contract.

### d. CONNECTICUT UNFAIR TRADE PRACTICES ACT

73. ABW violated CUTPA in the following ways:

    a. The violations of TILA as aforedescribed;

    b. It sold the Vehicle to Plaintiff in an unsafe condition despite being aware of the condition by way of the disclosure of structural damage at auction;

    c.    Its repeated conduct in selling of structurally damaged, unsafe vehicles to consumers, including Plaintiff; and

    d.    It falsely represented to Plaintiff on the Connecticut Department of Motor Vehicles form K-208 that the Vehicle was safe for operation and that the "frame/chassis" passed inspection.

74. ABW's conduct, as aforedescribed, was deceptive and unfair, and in violation of CUTPA. It has caused Plaintiff to suffer ascertainable losses and damages in that he was not able to make a meaningful comparison of credit terms, he was sold an unsafe Vehicle, and he has not had all sums paid under the Contract returned to him.

75. ABW is liable to Plaintiff for his actual damages plus punitive damages and a reasonable attorney's fee and costs.

76. Capital One is liable to Plaintiff as assignee of the Contract pursuant to Conn. Gen. Stat. § 52-572g and the terms of the Contract.

### e. CONNECTICUT UNFAIR TRADE PRACTICES (CAPITAL ONE ONLY)

77. Capital One violated CUTPA in the following ways:

    a.  Its violations of the FCRA as aforedescribed,

    b.  Its violations of the CCPA as aforedescribed; and

    c.  Its willful failure to acknowledge Plaintiff's disputing of the Account despite two admonishments.

78.     Capital One's conduct, as aforedescribed, was deceptive and unfair, and in violation of CUTPA. It has Plaintiff to suffer ascertainable losses and damages in that he was denied credit.

79.     Capital One is liable to Plaintiff for his actual damages plus punitive damages and a reasonable attorney's fee and costs.

WHEREFORE, Plaintiff claims actual damages, statutory damages of $2,000, punitive damage, an order stating that Plaintiff validly revoked acceptance of the Vehicle, and attorney's fees and costs.

PLAINTIFF, MARIO ACUNA,

By: _____
Daniel S. Blinn (ct02188)
dblinn@consumerlawgroup.com
Brendan L. Mahoney (ct29839)
bmahoney@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax (860) 571-7457